IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-833 |
| DR. LEONARD VANDER LINDE, *et al.*, | * | |
| Defendants | * | |
| | *** | Consolidated with |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-2177 |
| GOVERNOR LAWRANCE HOGAN, *et al.*, | * | |
| Defendants | * | |
| | *** | |
| DANIEL THOMAS LANAHAN, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-2284 |
| GOVERNOR LAWRANCE HOGAN, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM**

The above-captioned cases were opened upon receipt of Complaints alleging Plaintiff, a self-described voluntarily committed mental health care patient, has been over-medicated by his treatment team, denied release, and has had his rights and privileges improperly revoked. Civil

Action No. CCB-18-833 (D. Md.), ECF No. 1; Civil Action No. CCB-2177 (D. Md.), ECF No. 1; Civil Action No. CCB-2284 (D. Md.) ECF No. 1. The Complaints included fantastical, delusional claims regarding the military, NATO, the FBI, and Prince Harry, which the court advised Plaintiff would not be considered. Civil Action No. CCB-18-833, ECF No. 1. The cases were consolidated and all defendants except Dr. Linda de Hoyos and Dr. Leonard Vander Linde were dismissed. Now pending is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed by defendants De Hoyos and Linde. *Id.*, ECF No. 14. Plaintiff has responded. *Id.*, ECF Nos. 16, 18, 19, 20. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, the dispositive motion will be GRANTED.

**Background**

A. Plaintiff's allegations:

Plaintiff, Daniel Lanahan, currently residing at the William R. Sharpe, Jr. Hospital in Weston, West Virginia, filed these civil rights actions pursuant to 42 U.S.C. § 1983. At the time he filed the cases, he was undergoing mental health evaluation and treatment at Thomas B. Finan Center, a multi-purpose psychiatric facility in Cumberland, Maryland, maintained by the Maryland Department of Health and Mental Hygiene.[1]

1. Medical Care

Plaintiff alleges that he was taken off his proper medication, including Adderall, due to his impulse disorder and that employees at the Finan Center are trying to over medicate him. Civil

---

[1] *The Thomas B. Finan Center*, MD. DEP'T HEALTH, https://health.maryland.gov/finan (last visited August 27, 2019).

2

Action No. CCB-18-833, ECF No. 6, pp. 1, 3. He alleges that his medication was changed so that he could not function properly. *Id.*, p. 6. He indicates that Dr. Vander Linde and Dr. de Hoyas are responsible for stopping his medications. Civil Action No. CCB-18-2177, ECF No. 1, p. 2.

2. Privileges

Plaintiff alleges that he was interviewed by the Maryland State Police regarding Maryland Attorney General Brian Frosh and as a result his telephone privileges were suspended. Civil Action No. CCB-18-833, ECF No. 6, p. 1. He claims that Dr. Vander Linde and Dr. de Hoyas directed that his privileges be revoked. Civil Action No. CCB-18-2177, ECF No. 1, p. 2.

3. Detention

Plaintiff alleges that he was illegally detained at the Finan Center and was forced to escape. Civil Action No. CCB-18-833, ECF No. 8, p. 11.

B. Record evidence

The reason for plaintiff's commitment to various mental health facilities is well documented by this court. As a result of an altercation while plaintiff was committed to the Division of Correction, plaintiff was criminally charged with second degree assault against a Division of Correction employee. *See Lanahan v. Maryland, et al.*, Civil Action No. JFM-15-2030 (D. Md.), ECF No. 29-5, p. 1. On June 22, 2012, the District Court of Maryland for Howard County ordered that plaintiff be evaluated to determine if he was competent to stand trial for the assault charge. *Id.*, ECF No. 29-7. Plaintiff was evaluated and on August 31, 2012, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial and a danger to himself or others. *Id.*, ECF No. 29-8. Plaintiff was ordered committed to the custody of the Maryland Department of Health and Mental Hygiene. *Id.*

3

On September 5, 2014, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial and not likely to regain competence within the foreseeable future. *Id.*, ECF No. 29-9. Plaintiff was ordered civilly committed and the assault charge was dismissed the same day. *Id.*, ECF No. 29-5, p. 1.

On September 7, 2017, plaintiff was transferred from Clifton T. Perkins Hospital Center to the Thomas B. Finan Center where he was initially admitted on a voluntary basis after signing an Application for Voluntary Admission. Civil Action No. CCB-18-833, ECF No. 14-4, ¶ 4 (Linde Affidavit); ECF No. 14-5 (Application for Voluntary Admission).

On January 26, 2018, plaintiff's status changed to an involuntary admission after he was civilly committed by an administrative law judge who found him a danger to himself or others. *Id.*, ECF No. 14-6. Plaintiff's appeal of the administrative law judge's decision was denied by the Circuit Court of Maryland for Allegany County. *Id.*, ECF No. 14-7.

1. Medical Care

Defendant Linda de Hoyos was plaintiff's treating psychiatrist from May to June, 2018. *Id.*, ECF No. 14-8, ¶ 4 (de Hoyos Affidavit). Leonard Vander Linde was plaintiff's treating psychiatrist from June until July 18, 2018. *Id.*, ECF No. 14-4, ¶ 5.

Plaintiff's treating physicians aver that while at Finan, plaintiff was diagnosed with schizoaffective disorder, bipolar type, antisocial personality disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.*, ECF No. 14-4, ¶ 6; ECF No. 14-8, ¶ 5. Plaintiff's mental health disorders cause him to suffer symptoms including paranoia, delusional thinking, and threatening behaviors. *Id.*, ECF No. 14-4 ¶ 7, ECF No. 14-8 ¶ 5. The delusions include plaintiff's beliefs that he had an implanted computer device in his head, he was a CIA agent, the United

4

Nations was going to free him from Finan and conspiracies involving the FBI and President Donald Trump. *Id.*, ECF No. 14-4, ¶ 7; ECF No. 14-8, ¶ 5.

To treat his mental illness, plaintiff was prescribed antipsychotic medications Thorazine and Zyprexa. ECF No. 14-4, ¶ 15; ECF No. 14-8, ¶ 6. Doctors Linde and de Hoyos each aver that these antipsychotic medications are the standard of care for treating schizoaffective disorder, bipolar type. *Id.* Plaintiff regularly refused his daily doses of Thorazine and Zyprexa while being treated by Linde and de Hoyos. *Id.*, ECF No. 14-4, ¶ 16; ECF No. 14-8, ¶ 8. While under the care of Linde and de Hoyos plaintiff's compliance with his antipsychotic medication was voluntary and sporadic but he was not forcibly medicated. *Id.*, ECF No. 14-4, ¶ 17, ECF No. 14-8, ¶ 7.

On July 9, 2018, a clinical review panel met pursuant to Md. Code Ann., Health-Gen. §10-708 to review the medication regimen that had been prescribed to treat plaintiff's mental illness, but which plaintiff refused to take. *Id.*, ECF No. 14-4, ¶ 18; ECF No. 14-9 (Clinical Review Panel Decision). At that time, Zyprexa and Thorazine were prescribed to treat plaintiff's psychotic symptoms. *Id.*, ECF No. 14-9, p. 2. The panel considered alternatives, but determined, based upon plaintiff's threats to kill a staff member and threats to government officials, that he posed a danger to others and that the medication prescribed was a reasonable exercise of professional judgment as the standard treatment for plaintiff's psychotic symptoms and mood disorders. *Id.*, ECF No. 14-9, p. 3. The panel approved medicating plaintiff over his objection with Olanzapine (the generic name for Zyprexa) and Chlorpromazine (the generic name for Thorazine). *Id.*, ECF No. 14-9, p. 4; ECF No. 14-4, ¶ 18. Plaintiff appealed the panel's decision but on July 16, 2018,

5

plaintiff eloped from the Finan Center before his appeal was considered.[2] *Id.*, ECF No. 14-4, ¶ 13, 18; ECF No. 14-10.

Plaintiff regularly and consistently denies that he suffers from schizoaffective disorder and claims instead that he suffers only from Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.*, ECF No. 14-4, ¶ 19. Due to his belief that ADHD is his only valid diagnosis, he has regularly denied the need for antipsychotic medication. *Id.*, ECF No. 14-4, ¶ 16; ECF No. 14-8, ¶ 8. Rather than the medications prescribed by his treating psychiatrists, plaintiff requested Adderall and Methadone. *Id.*, ECF No. 14-4, ¶ 16; ECF No. 14-8, ¶ 8. Although plaintiff was compliant with his prescription for Adderall, Adderall is not the standard of care for treating schizoaffective disorder. *Id.*, ECF No. 14-4, ¶ 20; ECF No. 14-8, ¶ 9. Dr. Linde and Dr. de Hoyos each aver that stimulants such as Adderall can worsen plaintiff's mental illness symptoms of paranoia, irritability, and aggression which were not under control due to his failure to comply with taking the antipsychotic medications. *Id.*, ECF No. 14-4, ¶ 20; ECF No. 14-8, ¶ 9. Additionally, on June 27, 2018, plaintiff was found trading Adderall, against hospital policy, with another patient. *Id.* In light of the foregoing, plaintiff's Adderall prescription was discontinued. *Id.* Linde and de Hoyos each aver that the standard of care for treating schizoaffective disorder is to treat the psychotic illness symptoms first and then treat symptoms of disorders such as ADHD if they remain present. *Id.*, ECF No. 14-4, ¶ 21, ECF No. 14-8, ¶ 9.

2. Denial of Privileges and Programming

---

[2] Plaintiff was found in West Virginia and placed in jail where he was to be evaluated. Whether he will be returned to Maryland is unknown. *Id.*, ECF No. 14-4, ¶ 13.

Linde avers that when plaintiff was first admitted to Finan he was cooperative with staff and peers. *Id.*, ECF No. 14-4, ¶ 8. Over time he became preoccupied with delusional thoughts regarding the Secret Service, judges and the United Nations. *Id.* He made threatening comments toward staff which necessitated his having a staff escort at times. *Id.* He also claimed there were conspiracies occurring in the hospital directed at him. *Id.* Dr. de Hoyos indicates that plaintiff was often hostile, demanding and threatening and made numerous threats against staff. *Id.*, ECF No. 14-8, ¶ 11. In January 2018, plaintiff was found with a sharpened strip of metal. *Id.*, ECF No. 14-4, ¶ 9.

Linde explains that in the months prior to plaintiff's elopement from the Finan Center his psychosis worsened and his delusions regarding conspiracies and grandiosity became more prominent. *Id.*, ECF No. 14-4, ¶ 10. Plaintiff threatened to kill Drs. Linde and de Hoyos, as well as Dr. Linde's family. *Id.*, ECF No. 14-4, ¶ 11. Plaintiff also contacted a woman he knew from high school, who notified staff at the Finan Center that plaintiff was stalking her and writing unwanted letters. *Id.* Additionally, plaintiff called the Maryland Attorney General and threatened to kill him and his family, which led to an investigation by the Maryland State Police and the revocation of plaintiff's phone privileges. *Id.*

Due to plaintiff's threatening conduct, plaintiff was placed on precautions and had privileges restricted. *Id.*, ECF No. 14-4, ¶ 12; ECF No. 14-8, ¶ 11. After threatening staff he was placed on assault precautions and provided a higher level of supervision to protect plaintiff and others. *Id.* Drs. Linde and de Hoyos each aver that the use of precautions, such as staff escorts, and curtailment of privileges are consistent with Finan Center policies in place to maintain a safe

and secure environment. *Id.*, ECF No. 14-4, ¶ 12; ECF No. 14-8, ¶ 11; ECF No. 14-11 (Assault/Aggression and Elopement Precautions).

3. Discharge

As an involuntarily committed patient, plaintiff was entitled to semi-annual hearings to determine whether he should be retained or released. *See* Md. Code Ann. Crim. Proc. § 3-106(e); COMAR 10.21.01.08C.

Drs. Linde and de Hoyos monitored plaintiff's psychosis for signs of suitability for discharge however, due to plaintiff's unmanaged psychotic symptoms and continuing dangerous behavior, they did not find he was suitable for discharge to the community. Civil Action No. CCB-18-883, ECF No. 14-4, ¶ 14; ECF No. 14-8, ¶ 12. Plaintiff remained civilly committed to the Finan Center until his elopement on July 15, 2018. *Id.*, ECF No. 14-4, ¶ 13.

## Standard of Review

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions

8

or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded 'a reasonable opportunity for discovery'" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Here, plaintiff has not filed a Rule 56(d) affidavit. Under these circumstances, the court will construe defendants' motion as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

9

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

**Analysis**

Involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. Therefore, the court must analyze plaintiff's complaints within the scope of Fourteenth Amendment protections afforded involuntary patients at state psychiatric facilities, to examine whether the state is providing these individuals with services to ensure their reasonable safety and freedom from physical restraint. *See Youngberg v. Romeo*, 457 U.S. 307, 319 (1982). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321–22 (analyzing claims that hospital officials knew patient was being injured but failed to intervene, improperly restrained patient for prolonged periods and were not providing appropriate treatment or training

for his mental retardation); *see also Patten v. Nichols*, 274 F.3d 829, 837–38 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients).

Under the *Youngberg* standard, the state must provide plaintiff with "adequate food, shelter, clothing, and medical care." *Youngberg*, 457 U.S. at 315. According to the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten*, 274 F.3d at 838.

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 320 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting). The court applies the "professional judgment" standard, in which "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.[3]

1. Medical Care

Plaintiff complains about the medication prescribed him but the record shows that plaintiff received appropriate and regular treatment for his mental illness. Plaintiff regularly failed to take

---

[3] In applying this standard, the Fourth Circuit has held that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten*, 274 F.3d at 845–46.

his medication as prescribed. Moreover, the medications he requested did not comport with the standard of care for his diagnosed illnesses. He does not identify who provided inadequate medical care, nor does he allege how there was a "substantial departure from accepted professional judgment." As such, his claims regarding medical care will be denied.

Further, as an involuntarily committed patient in a State psychiatric facility, plaintiff has a "'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009) (quoting *Washington*, 494 U.S. at 237–38 (Stevens, J., concurring in part and dissenting in part)). Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg*, 457 U.S. at 321.[4]

---

[4] In *Lanahan v. State*, Civil Action No. JFM-15-2030, the court considered plaintiff's claims that he was forcibly medicated and denied treatment for ADD/ADHD. The court held:

> There is ample evidence that plaintiff's involuntary medication was necessitated by his behavior. Against the backdrop of plaintiff's behavior, his liberty interest in remaining free of unwanted medication was properly overridden. *See Harper*, 494 U.S. at 225. Moreover, plaintiff received the procedural protections required before a protected liberty interest may be infringed. Plaintiff was provided notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses each time an order for his involuntary medication was issued. ECF 29-10, 29-11, 29-13, 29-14, 29-16. The process for review of the decisions to involuntarily medicate plaintiff comports with procedural due process. *See Harper*, 494 U.S. at 235.

> Plaintiff's claim that he does not suffer from a psychiatric illness, but rather requires medication to treat ADD or ADHD, is belied by the record and appears to be the fruit of his delusional thinking. Nothing in plaintiff's treatment constitutes a substantial departure from professional judgment or impermissibly impacted plaintiff's health. Defendants exercised professional judgment in deciding to forcibly medicate plaintiff and in the selection of the medication appropriate to treat him. Based on the record evidence, defendants Sadiq Al-Samarrai, M.D., Khalid El-Sayed, M.D., and David Helsel, M.D. are entitled to summary judgment.

Here there is no evidence that plaintiff was forcibly medicated. Rather he left the Finan Center while his appeal of the forcible medication was pending.

2.     Denial of Privileges

Involuntarily committed patients maintain "constitutionally protected interests in . . . reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The court must balance the "individual's interest in liberty against the State's asserted reason for restraining individual liberty" with a "presumption of correctness" afforded to the judgment exercised by treatment professionals. *Id.* at 320, 324.

Plaintiff was placed on precautions and his telephone use restricted due to his own actions, which included, at various times, refusing to take prescribed medications, possessing a weapon, and threatening a state official over the telephone. Plaintiff's own conduct necessitated the precautions and restrictions placed on him and were reasonable responses designed to protect others from the threats he made.

Plaintiff has not alleged, much less demonstrated, that any of the decisions regarding his security, privileges, or programming were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. The undisputed evidence demonstrates that defendants exercised professional judgment in crafting and imposing the restrictions on plaintiff's activities. Moreover, the restrictions furthered an important governmental interest: the protection of the public.

---

*Id.*, ECF No. 48, pp. 10-11.

13

3. Discharge

Plaintiff received all the process he was due when he voluntarily committed himself to the Finan Center and when his commitment was converted to an involuntary commitment after a hearing. He was lawfully held at Finan and eligible for semi-annual hearings regarding his continued commitment. Plaintiff's psychotic behavior and poor insight into his mental illness remained throughout his admission to Finan and supported the decision declining to recommend his discharge to the community, which was a reasonable exercise of professional judgment. As such, defendants are entitled to summary judgment.

## Conclusion

For the aforementioned reasons, defendants' motion to dismiss, or in the alternative for summary judgment, construed as a motion for summary judgment, shall be GRANTED. A separate Order follows.

8/28/19
Date

/s/ CCB
Catherine C. Blake
United States District Judge